**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MALIBU MEDIA, LLC,

       Plaintiff,

v.                               Civil Action No. 1:13-cv-02659

                                 Judge Edmond E. Chang

ROBERT GUYSER,

       Defendant.

_____/

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT
AGAINST DEFENDANT ROBERT GUYSER**

       Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 55, hereby files its Memorandum of Points and Authorities in Support of its Motion for Entry of Default Judgment ("Motion") filed contemporaneously herewith against Defendant, Robert Guyser ("Defendant"), and in support thereof, states:

**I.      INTRODUCTION**

       Plaintiff seeks entry of default judgment against Defendant for failure to plead or otherwise defend against Plaintiff's Amended Complaint for direct copyright infringement of Plaintiff's motion picture works listed on Exhibit A attached hereto (the "Works")  using the internet and the BitTorrent protocol.  Defendant, by reason of default, is taken to have conceded the truth of the factual allegations in the Amended Complaint.  Plaintiff, therefore, now seeks entry of default judgment by the Court awarding (a) statutory damages under the Copyright Act, (b) the costs and reasonable attorneys' fees incurred by Plaintiff in this action, and (c) injunctive relief to prevent further infringement by Defendant.

II.     **PROCEDURAL BACKGROUND**

1.      On April 9, 2013, Plaintiff filed the Complaint in this action.  [CM/ECF No. 1].

2.      On April 23, 2013, Plaintiff filed its Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference requesting the Court's authorization to serve discovery on the Doe Defendant's Internet Service Provider ("ISP") in order to learn the Defendant's true identity.  The Court granted this motion on April 25, 2013.  [CM/ECF No. 8].

3.      Pursuant to the issuance of the third party subpoena, Defendant's ISP disclosed Defendant's true identity to Plaintiff.  *See* Decl. of Mary K. Schulz, Esq.

4.      On July 25, 2013, Plaintiff filed its Amended Complaint in this action.  [CM/ECF No. 10].

5.      On August 6, 2013, Plaintiff filed its Second Amended Complaint in this action.  [CM/ECF No. 11].

6.      On August 7, 2013, Plaintiff filed its *Corrected* Second Amended Complaint in this action.  [CM/ECF No. 12].

7.      On August 8, 2013, Plaintiff filed its *Second Corrected* Second Amended Complaint in this action.  [CM/ECF No. 14].

8.      Plaintiff served Defendant Robert Guyser with a Summons and *Second Corrected* Second Amended Complaint on August 31, 2013.  *See* Affidavit of Service [CM/ECF No. 18].

9.      Defendant failed to plead or otherwise defend against Plaintiff's *Second Corrected* Second Amended Complaint.

10.     On October 2, 2013, Plaintiff's oral Motion for Default was granted by this Court and default was entered as to Defendant on October 2, 2013.  [CM/ECF No. 19].

2

11.     Defendant is not a minor, incompetent person or in active military service.  *See* Decl. of Mary K. Schulz, Esq.

## I.      DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT

### A.  Entry of Default Judgment is Factually and Legally Appropriate

#### 1.   Defendant's Default Concedes the Truth of the Facts Alleged in the *Second Corrected* Second Amended Complaint.

By defaulting, Defendant admitted the truth of the allegations of the *Second Corrected* Second Amended Complaint.  *See, e.g., Sony Music Entm't Inc. v. Elias*, 2004 WL 141959, at *3 (C.D. Cal. 2004) (action against user of on-line media distribution system; "[s]ince this Court has found that Defendant is in default, the factual allegations in Plaintiffs' complaint are deemed admitted."); *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.") (internal quotation marks and citation omitted); *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."); *Song Music Entm't, Inc. v. Global Arts Prod.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999) (in copyright infringement case, default establishes liability).

#### 2.   Plaintiff's Allegations Are Factually and Legally Sufficient to Support its Claims of Copyright Infringement.

Plaintiff's allegations in the *Second Corrected* Second Amended Complaint support its copyright infringement claims.  It is well-settled that "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991).

3

a.   Plaintiff Has Demonstrated Ownership of a Valid Copyright

Plaintiff alleged that it is the owner of the copyrights.  *See Second Corrected* Second Amended Complaint, ¶¶ 3, 29.  Defendant admitted this allegation by failing to plead or otherwise defend against Plaintiff's *Second Corrected* Second Amended Complaint.

Plaintiff, therefore, has met the first element.

b.   <u>Plaintiff Has Demonstrated Direct Copyright Infringement by Defendant</u>

As to the second element, Plaintiff alleged that it has actionable claims for direct copyright infringement against Defendant based on Defendant's unauthorized use of the "BitTorrent" protocol to illegally download, reproduce, distribute, perform and display Plaintiff's Works.  Specifically, Plaintiff's *Second Corrected* Second Amended Complaint alleges that:

> The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing venues used for distributing large amounts of data, including . . . digital movie files.  *Id*. at ¶ 10.

> In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits.  Users then exchange these small bits amongst each other[.]  *Id*. at ¶ 12.

> After the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized.  *Id*. at ¶ 13.

> Plaintiff's investigator, IPP Limited, established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A.  *Id*. at ¶ 17.

> IPP Limited downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A.  *Id*. at ¶ 18.

4

> Each of the cryptographic file hashes as set forth on Exhibit A correlates to copyrighted movies owned by Plaintiff as identified on Exhibit B. *Id*. at ¶ 19.

> IPP Limited [] verified that the digital media file correlating to each file hash listed on Exhibit A contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash on Exhibit A. *Id*. at ¶ 20.

> By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit. *Id*. at ¶ 30.

> Plaintiff did not authorize, permit or consent to Defendant's distribution of its works. *Id*. at ¶ 31

> As a result of the foregoing, Defendant violated Plaintiff's exclusive [copy]right[s]. *Id*. at ¶ 32.

> Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2). *Id*. at ¶ 33.

Defendant's acts of infringement were committed with knowledge and willfulness. The very nature of the torrent platform evidences Defendant's intent to infringe copyrights. First, and more obvious, getting a film for free, when a person would otherwise have to pay for it, evidences intent to bypass legitimate means to obtain that film. Accordingly, such conduct shows knowledge of copyright infringement. *See Arista Records, Inc. v. Becker Enterprises, Inc.,* 298 F. Supp. 2d 1310, 1313 (S.D.FL.2003) (stating that the sales price is good evidence that a defendant knew he was infringing copyrights when that sales price is well below the average retail price).

Second, it is clear that downloading the particular torrent software is a willful act, in and of itself, particularly as that software's main purpose is to share unlicensed content. In the case of the torrent software, a substantial amount of technical configuration is required.

5

Third, it has been shown that the use of the BitTorrent protocol is primarily for the infringement of copyrights. As stated in a January 2010 study by a Princeton Senior Sauhard Sahi (under the supervision of Princeton Professor Ed Felton), about 99% of all files in BitTorrent were infringing copyrights (10 of the 1021 files were found to be likely non-infringing), with 100% of movie and television files found to be infringed content. See attached hereto as Exhibit B a true a correct copy of the article entitled "99% of BitTorrent files pirated" by George Ou, posted on http://www.digitalsociety.org/2010/01/princeton-study-99-of-bittorrent-files-pirated/.     Indeed, "BitTorrent is to stealing movies, TV shows, music, videogames, and now books what bolt-cutters are to stealing bicycles."[1]

The International Federation for Phonographic Industry (IFPI), issued a thought provoking report entitled "Music, how, when and where you want it," attached as Exhibit C.  On page 18, the IFPI provides statistics establishing that file sharers' primary motivation for their theft is the "lure of free:"

> A separate body of research helps explain why illegal file-sharing is having this impact on consumer behavior, confirming the main driver of piracy to be not better choice or quality, but the "lure of free". Researchers GFK found that "because it's free" was the main answer given among over 400 illegal filesharers in research unveiled in Sweden in July 2009. A study by Entertainment Media Research in the UK found that 71 per cent of those who admitted they increased their file-sharing activity in 2008 did so "because it's free". In Norway, research by Norstat in 2009 also found the most cited reason for illegal downloading from P2P services was "because it's free". Further studies came to broadly the same conclusion in Japan and Belgium in 2009.

Plaintiff has further alleged that Defendant formed part of a BitTorrent "swarm" infringing the copyrighted Works through the results of Plaintiff's forensic investigation. Specifically, Plaintiff has alleged that:

---

[1] *See Testimony of Scott Turow President of the Authors Guild Before the Senate Judiciary Committee* at http://www.judiciary.senate.gov/pdf/11-2-16%20Turow%20Testimony.pdf

6

> In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits amongst each other[.] *Second Corrected Second Amended Complaint*, ¶ 12.
>
> Each bit of a BitTorrent file is assigned a unique cryptographic hash value. *Id.* at ¶ 14.
>
> The BitTorrent protocol utilizes cryptographic hash values to ensure each bit is properly routed amongst BitTorrent users as they engage in file sharing. *Id.* at ¶ 15.
>
> The entirety of the digital media file also has a unique cryptographic hash value . . . Once infringers complete downloading all bits which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate. *Id.* at ¶ 16.
>
> IPP Limited downloaded from Defendant one or more bits of each file as listed in Exhibit A. IPP Limited further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash matched what is listed on Exhibit A. *Id.* at ¶ 20.
>
> IPP Limited downloaded from Defendant one or more bits of each digital media file as identified by its hash value on Exhibit A. The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash listed in Exhibit A is included within the column labeled Hit Date UTC. *Id.* at ¶ 21.

By defaulting, Defendant has conceded the truth of the foregoing allegations. *Sony Music Entm't Inc.*, 2004 WL 141959, at *3.

Courts have held that using file-sharing software and protocols, such as BitTorrent, to download copyrighted works and reproduce, distribute, display or perform them without permission of the copyright holder constitutes copyright infringement. *See, e.g., Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 489-96, 497-501 (1st Cir. 2011) (finding copyright infringement where file-sharing software was used to download and distribute media);

7

*Donkeyball Movie, LLC v. Does 1-171*, 2011 WL 1807452, *1-4 (D.D.C. 2011) (upholding expedited discovery of the nature used in this case where defendants used the BitTorrent protocol to illegally distribute plaintiff's motion picture); *Virgin Records America, Inc. v. Bagan*, 2009 WL 2170153, at *3 (D.N.J. 2009) (holding that "using P2P network software to download copyrighted recordings and distribute them over the network without permission of the copyright holder constitutes copyright infringement"); *BMG Music v. Gonzalez*, 430 F.3d 888, 890-91 (7th Cir. 2005) (downloading copyrighted works through peer-to-peer networks is not fair use).

By downloading the Works and reproducing, distributing, displaying or performing it using the BitTorrent protocol, Defendant has infringed Plaintiffs' copyright on these Works. *See* 17 U.S.C. § 106. Based upon these admitted allegations, Plaintiff has established grounds to impose liability on Defendant for direct copyright infringement.

**A.** Statutory Damages Should be Awarded to Plaintiff

Plaintiff hereby elects to recover statutory damages against Defendant as provided by 17 U.S.C. § 504.[2] Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(2). For unintentional infringement, 17 U.S.C. § 504(c) provides that "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). This is not unintentional infringement, however, and pursuant to 17 U.S.C. § 504(c)(2), the Court upon a finding of willful infringement may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. §

---

[2]    Plaintiff need not prove actual damages to be entitled to an award of statutory damages, and may make an election of statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of [D]efendant's profits." *Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 112 S.Ct. 1063 (2002).

504(c)(2). Here, Plaintiff pled that Defendant's infringement was committed willfully. *Second Corrected* Second Amended Complaint, ¶ 33. Therefore, a statutory damages award up to $150,000 would be appropriate.

Significantly, legislative history demonstrates that Congress, recognizing the likelihood of widespread infringement through the internet, specifically amended the Copyright Act through the Digital Theft Deterrence Act of 1999 to increase the penalties for copyright infringement:

> By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. The advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs and, at the same time, produce perfect secondhand copies . . . Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct. H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

H.R. Rep. No. 106-216, at 3 (1999) (Emphasis added).

Here, despite the fact of Defendant's willful infringement, Plaintiff only seeks an award of $22,500.00 in statutory damages. This amount is reasonable when considering that Plaintiff's actual damages far exceed this sum. To explain, Defendant materially aided each of the other participants in the BitTorrent swarm of infringers. This swarm contained thousands of peers and

9

continues to grow. Plaintiff's actual damages are the lost sales of its content to those thousands of infringers. In the aggregate, these lost sales far exceed $22,500.00.[3]

Courts routinely award statutory damages in an amount equal to $30,000 for intentional online copyright infringement per work on default judgment. *See, e.g., Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer,* 2011 WL 4632597, at *1-2 (M.D. Fla. 2011) (on default judgment, awarding $30,000 statutory damages for online infringement); *Liberty Media Holdings, Inc. v. Quynn Alan Phillips*, *Everette v. Astrue*, No. 3:11-cv-00029-JAH-JMA, ECF No. 12 (S.D. Cal. June 6, 2011) (same); *Getaped.com, Inc. v Cangemi*, 188 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2002) (same).

Here, the Court should thus award statutory damages of $22,500.00 to Plaintiff because said amount is reasonable and appropriate based on each Defendant's multiple willful infringements, and the legislative intent behind the Digital Theft Deterrence Act of 1999.

**B.** Injunctive Relief Should be Awarded to Plaintiff

Permanent injunctive relief should be awarded to Plaintiff. Plaintiff seeks an injunction:

> (A) Permanently enjoin[ing] Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Works;

> (B) Order[ing] that Defendant delete and permanently remove the digital media files relating to Plaintiff's Works from each of the computers under such Defendant's possession, custody or control; [and]

> (C) Order[ing] that Defendant delete and permanently remove the infringing copies of the Works Defendant has on the

---

[3] Because Plaintiff here seeks only statutory damages within the range requested in the Complaint, no evidentiary hearing is necessary. *See, e.g., Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-64 (D.P.R. 2002) (no hearing necessary for determination of award of statutory damages; *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35, 37 (2d Cir. 1990) (same); *Fustock v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("While it is true . . . that the damages in this case were neither liquidated nor capable of mathematical calculation, it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

10

computers under Defendant's possession, custody or control . . .

. *Second Corrected* Second Amended Complaint, at p. 6, ¶ (A)-(C).

Permanent injunctive relief to prevent or restrain copyright infringement is authorized under the Copyright Act. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). The Copyright Act further provides that "the court may order the destruction . . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . [.]" 17 U.S.C. § 503(b).

A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Here, Plaintiff has plainly demonstrated each of these factors.

Addressing the first and second factors, Plaintiff has demonstrated that absent an injunction, Defendant will continue to cause Plaintiff irreparable injury that cannot fully be compensated or measured in money. Specifically, Plaintiff has established that Defendant's conduct has exposed the Works to "viral" infringement using the BitTorrent protocol, in which users in a BitTorrent "swarm" simultaneously upload and download the Works between and among innumerous other users. *Second Corrected* Second Amended Complaint, ¶ 12. By virtue of the workings of the BitTorrent protocol, a "seeder" of the copyrighted Work distributes the

11

whole, or portions of, the Work to other recipient peer users, who in turn deliver the whole or portion of the Work to other users in the "swarm." *Id*. Thus, absent injunctive relief to force the deletion of each torrent file or copy of the Works from Defendant's computers (and from the computers of those persons utilizing the BitTorrent protocol in active concert or participation with Defendants), infringement of the Works can continue unabated in exponential fashion. *Id*. Monetary damages, therefore, are inadequate to compensate Plaintiff for such irreparable injury, as Defendant continues, and will continue, to harm Plaintiff on a daily basis. *See Microsoft Corp. v. Big Boy Distribution LLC*, 589 F.Supp.2d 1308, 1321 (S.D. Fla. 2008) ("Generally, a showing of copyright infringement liability and threat of future violations is sufficient to warrant entry of a permanent injunction.").

Considering the balance of hardships between Plaintiff and Defendant, "any injury to [Defendants] caused by the . . . injunction would be a result of [Defendants] ceasing the allegedly infringing conduct." *Medias & Co., Inc. v. Ty, Inc.*, 106 F.Supp.2d 1132, 1140 (D. Colo. 2000). Hence, "this merits little equitable consideration." *Id*. Consequently, the balance of hardships weighs in Plaintiff's favor.

Finally, Plaintiff's prevention of copyright infringement is in the public interest because it "preserv[es] the integrity of copyright laws which encourage individual effort and creativity by granting valuable enforceable rights." *DSC Communications Corp. v. DGI Technologies*, 898 F. Supp. 1183, 1196 (N.D. Tex. 1995).

Courts routinely issue injunctive relief as part of a default judgment where, as here, an online media distribution system was used to download and distribute copyrighted works without permission. *See, e.g., Warner Bros. Records, Inc., v. Novak*, 2007 WL 1381748, at *2-3 (D.N.J. 2007) (holding that a permanent injunction enjoining defendants from infringing on

12

plaintiffs' copyrighted sound recordings "is appropriate and reasonable given [d]efendant's continuing infringement on [p]laintiff's sound recordings, and [d]efendant's failure to respond"); *Axact (PVT), Ltd. v. Student Network Resources, Inc.*, 2008 WL 4754907, at *3 (D.N.J. 2008) (granting injunctive relief to defendants on default judgment of copyright infringement claims of academic works and term papers).

Plaintiff, therefore, has demonstrated that it has suffered irreparable harm, and that remedies at law are inadequate. A permanent injunction is appropriate as it will cause no harm to Defendant, and such relief will be in the public interest. Therefore, Court should thus grant Plaintiff the requested injunctive relief.

## A. Costs of Suit and Attorneys' Fees Should be Awarded to Plaintiff

Plaintiff is entitled to recovery of its costs of suit and attorneys' fees incurred in this action. Section 505 of the Copyright Act expressly authorizes recovery of "full costs by or against any party other than the United States or an officer thereof," and further provides for an "award [of] a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

Courts routinely award costs and attorneys' fees to prevailing plaintiffs on default judgment, and especially when the infringement is willful. *See, e.g., Axact (PVT), Ltd. v. Student Network Resources*, 2008 WL 4754907, at *3 (D.N.J. 2008) ("Indeed, it has often been held that attorney's fees are awarded to prevailing copyright plaintiffs 'generally' or 'ordinarily.'") (*citing Rural Telephone Service Co., Inc. v. Feist Pubs., Inc.*, 1992 WL 160890, at *3 (D. Kan. 1992); *A&N Music Corp. v. Venezia*, 733 F. Supp. 955, 958-59 (E.D. Pa. 1990) (awarding costs and attorneys' fees where defendants "knowingly infringed" upon plaintiff's copyrights, and "failed to appear before [the] court to offer an explanation for his conduct").

13

In this case, the declaration of Plaintiff's counsel states that Plaintiff has incurred $2,525.00 in costs and attorneys' fees. *See* Decl. of Mary K. Schulz, Esq. ¶ 11, 12. Defendant in this case was not acting innocently when infringing Plaintiff's copyrighted Works using the BitTorrent protocol. As established by Plaintiff, Defendant's infringements were committed "willfully" under the Copyright Act, and Defendant's failure to respond to the Amended Complaint further demonstrates an unwillingness to respect applicable law. *Second Corrected Second Amended Complaint*, ¶ 33.

Accordingly, Plaintiff should be allowed recovery of its costs and attorneys' fees incurred in this action.

## I.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests entry of a default judgment in favor of Plaintiff and against Defendant, in the form of the Proposed Default Judgment and Permanent Injunction attached hereto.

**WHEREFORE**, Plaintiff, Malibu Media, LLC, respectfully requests that this Honorable Court enter a default judgment in favor of Plaintiff and against Defendant Robert Guyser:

(A)    Awarding Plaintiff statutory damages in the amount of $22,500.00 pursuant to 17 U.S.C. § 504(c)(1);

(B)    Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

(C)    Permanently enjoining Defendant from directly, contributorily or indirectly infringing Plaintiff's rights under federal or state law of Plaintiff's copyrighted works " (the "Works"), including, without limitation, by using the internet, BitTorrent or any other online media distribution system to reproduce (e.g., download) or distribute the Works, or to make the

14

Works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff;

(D)     Ordering that Defendant destroy all copies of Plaintiff's Works that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization, and shall destroy all copies of the Works transferred onto any physical medium or device in Defendant's possession, custody, or control; and

(E)     Granting Plaintiff any other and further relief this Court deems just and proper.

Dated: October 16, 2013.

Respectfully submitted,

By: ___/s/ *Mary K. Schulz*_____
Mary K. Schulz, 6183773
schulzlaw@me.com
Schulz Law, P.C.
1144 E. State Street, Suite A260
Geneva, IL 60134
Phone:  224.535.9510
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2013, I electronically filed the foregoing document with the Clerk of the Court and all parties using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

15

I further certify that some of the participants in the case are not CM/ECF users.  I have mailed the foregoing document via Priority U.S. Mail to the persons set forth in the Service List below.

By: ____/s/ *Mary K. Schulz*_____
Mary K. Schulz

**Service List**

Robert Guyser
2649 West North Avenue
Chicago, IL  60647

16